IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| MARDEN'S ARK CORP., and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITEDHEALTH GROUP INCORPORATED, <br><br> *Defendant*. | Case No. 5:23-cv-00708-M-KS <br><br> **CLASS ACTION** |

**PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

Plaintiff Marden's Ark Corp. ("Plaintiff") and Defendant UnitedHealth Group Inc. ("UHG" or "Defendant") have reached a Class Action Settlement Agreement and Release in this proposed class action brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (the "Agreement" or "Settlement") arising primarily from robocalls calls made by Defendant that were intended for insureds of UHG's subsidiary, United Healthcare, Inc. ("United Healthcare"), but, due to the transient nature of cellular telephone numbers, were in fact made to consumers who were not United Healthcare insureds – *i.e.*, "wrong number" calls.

The Agreement,[1] which is subject to this Court's approval, creates a non-reversionary common fund of $1,846,500.00 for the benefit of Plaintiff and proposed class members who UHG's Optum Community Health Workers called as part of UHG's Optum at Home program using an artificial or pre-recorded voice who were not members or subscribers of UHG or that opted out of receiving calls from UHG. This amounts to more than $350 for each of the

---

[1] The Agreement is attached hereto as Exhibit 1. Capitalized terms used herein, unless otherwise defined, have the same definitions as those terms in the Agreement.

1

approximately 5,000 potential Settlement Class Members that have been identified in UHG's records. *See* Declaration of Avi Kaufman, attached as Exhibit 2, ¶ 4.

The settlement fund will be used to pay the Settlement Administrator, any attorneys' fees and costs awarded to Class Counsel, and any service award awarded to Plaintiff.

The parties reached the Settlement after more than a year of contentious litigation, which included significant written fact discovery, expert analysis, and Defendant's deposition. See Kaufman Decl. ¶ 5. By the time the parties finalized an agreement, they were well aware of the strengths and weaknesses of their respective positions and the risks associated with pursuing TCPA "wrong number" cases through class certification and trial. *Id.* ¶ 5; *see, e.g., Davis v. Capital One, N.A.*, No. 1:22-cv-00903, 2023 U.S. Dist. LEXIS 189255, at *34-36 (E.D. Va. Oct. 20, 2023) ("Davis has also cited 'wrong-number' cases where class certification was granted, but there were findings in those cases, not present here, and in some of those cases, reserved on whether the issue of consent would justify de-certification. … Capital One, by contrast, has pointed to numerous district court decisions where a 'wrong-number' class was not certified for class treatment. Courts in these cases generally all found that class certification was inappropriate because of a lack of ascertainability and the predominance of individualized issues over common issues.").

In addition, to discuss settlement, the parties engaged in a full-day mediation session with the able assistance of Brad Winters, Esq. of JAMS, Inc. Kaufman Decl. ¶ 6.

If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled legal questions. The proposed settlement is fair, reasonable, adequate, and the anticipated Settlement Class Member payments will far exceed the payments in similar "wrong number" TCPA cases across the country. *See, e.g., Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 U.S. Dist. LEXIS 56655, at *3 (M.D. Fla. Apr. 2, 2019) (preliminary approving $1,269,500 settlement for an approximately 280,000 person class in a TCPA "wrong number" case); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 U.S. Dist. LEXIS 91448, at *3 (M.D. Fla. June 5, 2017) ("Chase established a $3.75 million fund for the 675,000-member class, and 24,156 class members

submitted a valid claim. Each claimant will receive approximately $81, which equals or exceeds the recovery in a typical TCPA class action.").

Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the settlement; (2) provisionally certify the proposed settlement class; (3) appoint as class counsel Avi R. Kaufman of Kaufman P.A. and Stefan Coleman of Coleman PLLC; (4) appoint Plaintiff as class representative; (5) approve the proposed notice plan; (6) appoint Kroll Settlement Administration to serve as Settlement Administrator; and (7) schedule the final fairness hearing and related dates.

## II. BACKGROUND

### A. The Telephone Consumer Protection Act

The Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…." The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821 (1991). As a remedial statute that was passed to protect consumers from unsolicited automated telephone calls, the TCPA is construed broadly to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

### B. Procedural History

On December 11, 2023, Plaintiff Marden's Ark Corp. filed a complaint against UHG in this action asserting that Defendant violated the TCPA by making pre-recorded calls to consumers who were not United Healthcare insureds without consent and for failing to stop the calls when consumers expressly requested to not be called. On February 20, 2024, UHG answered the complaint. ECF 12.

Since inception, the case has involved extensive discovery. On April 2, 2024, Plaintiff served written discovery requests on Defendant. Defendant responded to discovery, and the parties

3

engaged in lengthy meet and confers which resulted in Defendant supplementing its responses. Both parties have exchanged a substantial amount of documents in discovery. Plaintiff also worked with an expert to analyze the voluminous call records produced by UHG, preparing Plaintiff to resolve this action for the benefit of the Settlement Class or, if the case did not resolve, to move for class certification. Plaintiff also responded to discovery requests from Defendant. On August 30, 2024, Plaintiff served a notice for the deposition of Defendant's records custodian for the call records related to the calling campaign at issue. On September 12, 2024, Plaintiff took the deposition of Defendant's representative who managed the operations of Defendant's Pharmacy Outreach Call Center program. On September 25, 2024, Plaintiff served a notice for Defendant's corporate representative deposition, and began the conferral process with Defendant regarding deposition topics. Kaufman Decl. ¶ 9.

On January 16, 2025, the parties participated in an all-day mediation with Bradley Winters, Esq. of JAMS, Inc. and reached an agreement as to the framework of a class-wide resolution. The parties worked over the following weeks to reach a formal written class settlement agreement.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation against Defendant through trial and appeals. Class Counsel also has taken into account the difficulties in obtaining class certification and proving liability in "wrong number" cases, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, and the inherent delays in such litigation. *See, e.g., Davis*, 2023 U.S. Dist. LEXIS 189255, at *34-36. Class Counsel believes that the proposed Settlement is an excellent result for the Settlement Class, exceeding the per class member and per claim amounts of similar class action settlements in "wrong number" cases. Based on their evaluation of all of these factors, Plaintiff and Class Counsel have determined that the Settlement is in the best interests of Plaintiff and the Settlement Class. Kaufman Decl. ¶ 11.

Class Counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Class whereas continued and protracted litigation, even if successful, might ultimately deliver none. Kaufman Decl. ¶ 12. Based on their evaluation of all these factors, Plaintiff

and Class Counsel have determined that the Settlement is in the best interests of the Plaintiff and the Settlement Class. *Id*.

### III. THE PROPOSED SETTLEMENT

#### A. The Settlement Class

The proposed Settlement Class includes: All regular users or subscribers to numbers assigned to wireless carriers which Optum Community Health Workers called as part of the Optum at Home program during the Settlement Class Period using an artificial or pre-recorded voice who were not members or subscribers of United Healthcare or that opted out of receiving calls from United Healthcare. Excluded from the Settlement Class are: (1) the Judges presiding over this action and members of their families; (2) the Defendant, Defendant's respective subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded person(s). Agreement at § 1.1.34.

#### B. Settlement Relief

The Settlement provides meaningful monetary relief. Pursuant to the Agreement, Defendants will cause to be created a non-reversionary Settlement Fund in the amount of $1,846,500.00 for the purpose of making all required payments under this Settlement. Agreement at § 4.

#### C. Class Counsel Fees and Expenses and Service Award

Pursuant to the Agreement, Class Counsel will request that the Court approve an award of attorneys' fees, reimbursement of documented and reasonable costs and expenses, and a Service Award for Representative Plaintiff. Agreement at § 5.1. The Parties agree that the Court's failure to approve, in whole or in part, any award of attorneys' fees and expenses or a Service Award shall not prevent the Settlement from becoming effective, nor shall it be grounds for termination. Agreement at § 5.2.

**D. Notice Program**

The Settlement Administrator will use customary procedures including, third party services, to identify mailing and email addresses for the Settlement Class Members whose telephone numbers are provided in redacted form in Exhibit C. Agreement at § 6.5.2. Within thirty (30) days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall send direct notice substantially in the form of the Summary Notice in Exhibit D, as modified and/or approved by the Court, via U.S. Postal Service to any Settlement Class Member for which a mailing address is identified and/or by email to any Settlement Class Member for which an email address is identified. The Settlement Administrator will use customary procedures, including a search of the United States Postal Service's National Change of Address database, to update Settlement Class Members' addresses. The Settlement Administrator will use customary procedures, including third party services, to identify an alternate address for any Settlement Class Member for whom a mailed notice is returned as undeliverable, and promptly remail notice to them. Agreement at § 6.5.3.

The proposed notice includes, among other information: a description of the material terms of the Settlement, a date by which members of the Settlement Class may exclude themselves from or "opt-out" of the Settlement Class; a date by which members of the Settlement Class may object to the Settlement; and the date upon which the Final Approval Hearing is scheduled to occur.

Also within thirty (30) days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall disseminate a plain-language notice publicizing the Settlement and directing potential Settlement Class Members who did not receive direct notice to the Class Settlement Website to file a Claim Form through an internet media campaign designed by the Parties and the Settlement Administrator to target adults 18 years or older with telephone numbers that have been reassigned during the Settlement Class Period on desktop and mobile devices via the Google Display Network and Facebook social media platform for a 60-day duration.

The anticipated administration costs are approximately $71,000. *See* Declaration of Paul Ferruzzi of Kroll Settlement Administration LLC, attached as Exhibit 3, at ¶ 21. Those costs are

reasonable compared to the size of the Settlement Fund and in light of the costs for direct notice, an internet media campaign aimed at Settlement Class Members, and mailing of settlement payments to Settlement Class Members who submit valid claims.

E.     **Claims**

To obtain a payment from the Settlement, Settlement Class Members must timely submit by mail or online via the Class Settlement Website a valid Claim Form substantially in the form of Exhibit A, as modified and/or approved by the Court, by the Claims Deadline. All Claim Forms must be submitted to the Settlement Administrator by the Claims Deadline. A valid Claim Form means a Claim Form containing all required information, including a unique claimant identifier, and which is signed by the claimant and is timely submitted. Any Claim Form which is not timely submitted shall be denied. In the event a Settlement Class Member submits a Claim Form by the Claims Deadline but the Claim Form is not complete, then the Settlement Administrator shall give such Settlement Class Member a reasonable opportunity to provide any requested missing information. For any Settlement Class Member who submits a Claim Form determined by the Settlement Administrator to be incomplete, the Settlement Administrator shall mail a notice directly to such Settlement Class Member, notifying him or her of the missing information and providing him or her with an opportunity to cure (the "Cure Notice"). Settlement Class Members must cure incomplete claims on or before the Effective Date. Agreement at § 7.

Each Settlement Class Member who submits an Approved Claim shall be entitled to payment in an amount equivalent to their *pro rata* share of the Settlement Fund after any approved Fee Award, Service Award, and Settlement Administration Expenses are deducted. Agreement at § 4.3.2. Payments will be made directly to Settlement Class Members by the Settlement Administrator and are anticipated to be more than $500 each. Kaufman Decl. ¶ 7.

F.     **Opt-Out and Objection Procedures**

Any Class Member who has not submitted a timely written exclusion request and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement must submit written objections to the Clerk of the Court postmarked by the Opt-Out Deadline. Any

7

objection regarding or related to the Settlement Agreement must include: (i) the objector's name, address, and telephone number; (ii) the phone number(s) at which he or she received calls covered by this Settlement; and (iii) the factual basis and legal grounds for the objection. Only Settlement Class Members who submit timely objections may speak at the Final Approval Hearing. If a Settlement Class Member makes an objection through an attorney, the Settlement Class Member will be responsible for his or her personal attorney's fees and costs. Settlement at § 9.2.

Settlement Class Members may elect not to be part of the Class and not to be bound by this Settlement Agreement. Individual requests for exclusion may be submitted to the Settlement Administrator by mail and postmarked no later than the Opt-Out Deadline. No mass opt-outs are allowed. All requests for exclusion must be in writing and signed by the Settlement Class Member, include the Settlement Class Member's name, address, and the phone number(s) at which he or she received calls covered by this Settlement, and clearly state that the Person wishes to be excluded from the Litigation and the Settlement. Settlement at § 9.4.

### G. Release

The Release is narrowly tailored under the Agreement and means all claims, demands, causes of actions, suits, damages, and/or fees arising under the TCPA or similar state laws based on pre-recorded or artificial voice telephone calls made, or attempted to be made, by or on behalf of Defendant from December 11, 2019 through the date of preliminary approval. Agreement at § 1.1.26.

### IV. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiff respectfully requests that the Court provisionally certify the proposed Settlement Class for settlement purposes under Federal Rule of Civil Procedure 23(a) and (b)(3). Such certification will allow the Settlement Class to receive notice of the Settlement and its terms, including the right to submit a claim and recover money if the Settlement is approved, the right to be heard on the Settlement's fairness, the right to opt out of the Settlement, and the date, time and place of the final fairness hearing. For the following reasons, certification of the Class for Settlement purposes is appropriate under Rule 23(a) and (b)(3).

8

Case 5:23-cv-00708-M-KS     Document 33     Filed 03/10/25     Page 8 of 19

### A. Rule 23(a) requirements

<u>Numerosity is satisfied.</u>

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). The proposed Settlement Class consists of approximately 5,000 Settlement Class Members that have been identified in records produced by UHG in the Litigation by Plaintiff's telephony and database expert. *See* Kaufman Decl. ¶ 4. Numerosity is satisfied.

<u>Commonality is satisfied.</u>

Rule 23(a)(2) requires that there is "a common question of law or fact among the members of the class." Fed. R. Civ. P. 23(a)(2). To meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Here, the common questions are dispositive, apply equally to all class members, and can be resolved using uniform proof and legal analysis. They include: (1) whether an artificial or pre-recorded voice was used on calls to class members; (2) whether the calls were made to cellular telephone numbers; and (3) whether Defendant had consent for the calls. These legal and factual questions are shared by all class members, and the uniformity of the applicable law—the TCPA—makes resolution of these questions on a class-wide basis viable and efficient.

<u>Plaintiff's claim is typical of the Settlement Class's claims.</u>

For similar reasons, Plaintiff's claim is reasonably coextensive with the claims of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. Typicality is satisfied where the claims are based on the same legal theory. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 378 (D.S.C. 2015).

Here, Plaintiff's and Settlement Class members' claims arise from the same course of events: artificial or pre-recorded voice calls placed to cell phones by UHG as part of the same calling campaign to consumers who were not United Healthcare insureds and/or who expressly

9

Case 5:23-cv-00708-M-KS  Document 33  Filed 03/10/25  Page 9 of 19

requested to not be called. Plaintiff and proposed Settlement Class members all seek statutory damages for these calls pursuant to the same legal theory. Typicality is satisfied.

<u>Plaintiff and counsel will adequately represent the proposed Settlement Class.</u>

The last Rule 23(a) requirement assures that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement involves "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000).

Both of these requirements are met. Plaintiff's interests in this litigation are aligned with those of the class. All seek the same recovery for the same type of unlawful calls pursuant to the TCPA. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, and TCPA class actions, in particular. Class Counsel has vigorously litigated this action and will continue to vigorously prosecute this matter through completion. *See* Kaufman Decl. ¶¶ 17-23 and Exhibit 2 thereto. Adequacy is satisfied.

### B. Rule 23(b)(3) requirements

Class certification under Rule 23(b)(3) is appropriate where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809, 131 S. Ct. 2179, 2184 (2011).

<u>Common issues predominate.</u>

The predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (cleaned up). Predominance focuses "not only on the existence of common

10

questions, but also on how those questions relate to the controversy at the heart of the litigation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 366 (4th Cir. 2014).

This case is particularly well-suited for class treatment. The central issues in this case are (1) whether an artificial or pre-recorded voice was used on calls to class members; (2) whether the calls were made to cellular telephone numbers; and (3) whether Defendant had consent for the calls. A trial would focus on these common issues.

<u>A class action is superior</u>.

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. The superiority requirement is often met where, as here, class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 426 (4th Cir. 2003).

Since the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). And, resolution of thousands of claims in one action is far superior to individual lawsuits, promoting consistency and efficiency of adjudication. *See Gunnells*, 348 F.3d at 427 (class litigation "promotes consistency of results, giving defendants the benefit of finality and repose").

V. **THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

    A. **The settlement approval process**

A class action settlement requires court approval. Fed. R. Civ. P. 23(e); *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158 (4th Cir. 1991). As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Id*. at 158-159. The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could

11

hope to obtain. *See*, *e.g.*, *id.*; *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litig.* ("MCL 4th") § 21.632, at 414 (4th ed. 2004); *Grice v. PNC Mortgage Corp. of Am.,* No. 97-3084, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing MCL 4th's two-step process). In the first stage, the parties submit the proposed settlement to the Court for preliminary approval. In the second stage, following preliminary approval, the class is notified and a fairness hearing is scheduled at which the Court determines whether to approve the settlement. *See Bicking v. Mitchell Rubenstein & Assocs.,* No. 11-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011). This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 13:1 (5th ed. updated December 2016).

Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether sending notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (question at preliminary approval is whether there is "probable cause" to justify notifying class members of proposed settlement).

### B. Criteria for settlement approval

Fairness and adequacy are the touchstones of class action settlement approval. *Jiffy Lube*, 927 F.2d at 158. The factors that merit consideration during the approval process may be broken down into two major categories: those which go to "fairness" and those which go to "adequacy" of a settlement. *Id.*; *see* Fed. R. Civ. P. 23(e) (identifying relevant factors for settlement approval: "(A) the class representatives and class counsel have adequately represented the class; (B) the

proposal was negotiated at arm's length; (C) the relief provided for the class is adequate…; and (D) the proposal treats class members equitably relative to each other.").

The proposed Settlement Agreement is fair.

Courts consider the following factors when determining whether a proposed settlement is fair: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that has been conducted, (3) the circumstances surrounding negotiations, (4) the experience of counsel in the area of class action litigation, and (5) whether the plaintiff and class counsel have adequately represented the class. *Jiffy Lube*, 927 F.2d at 159; Fed. R. Civ. P. 23(e)(2)(A)-(B). All of these factors favor approving the settlement here.

Here, the parties reached a settlement after more than a year of contentious litigation, including significant discovery and the benefit of expert analysis. Kaufman Decl. ¶ 5. Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims, engaged in extensive formal discovery with Defendant, including the deposition of Defendant's employee who oversaw the calling campaign at issue, and engaged an expert who conducted an analysis of the call records produced in the litigation. Class Counsel's review of that discovery, expert analysis, and attendant issues enabled them and Plaintiff to gain an understanding of the evidence related to central questions in the action and prepared them for well-informed settlement negotiations. In fact, Class Counsel's efforts have exceeded the work often done in class actions to conduct a thorough analysis of the issues prior to settlement. *Cf. Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery").

Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. Kaufman Decl. ¶¶ 17-23 and Exhibit 2 thereto. Class Counsel zealously represented Plaintiff and the Settlement Class members' interests throughout the litigation and continue to do so.

Additionally, the Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this action. Kaufman Decl. ¶ 24.

The parties reached agreement only after mediating with the assistance of JAMS mediator Mr. Winters. Kaufman Decl. ¶¶ 10, 24. At all times the negotiations were at arms' length and free from collusion. *Id.* Plaintiff's counsel steadfastly advocated for substantial settlement relief and a streamlined process for distributing payments to the maximum possible number of Settlement Class Members.

Plaintiff and Plaintiff's counsel also were well aware of the risks they faced if they continued to litigate, particularly the risks inherent in seeking to certify and prevail at trial in "wrong number" cases. *Id.* ¶ 5; *see, e.g., Davis v. Capital One, N.A.*, No. 1:22-cv-00903, 2023 U.S. Dist. LEXIS 189255, at *34-36 (E.D. Va. Oct. 20, 2023) ("Davis has also cited 'wrong-number' cases where class certification was granted, but there were findings in those cases, not present here, and in some of those cases, reserved on whether the issue of consent would justify de-certification. … Capital One, by contrast, has pointed to numerous district court decisions where a 'wrong-number' class was not certified for class treatment. Courts in these cases generally all found that class certification was inappropriate because of a lack of ascertainability and the predominance of individualized issues over common issues."); *Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4 (D. Mass. 2019) (denying class certification in TCPA "wrong number" case in which the plaintiff was represented by Class Counsel in this case). And Plaintiff relied on the judgment of its counsel, who have extensive experience litigating, settling, and trying TCPA and other class actions. In such circumstances, it may be presumed that a settlement is fair. *See Good v. W. Va.-Am. Water Co.*, No. 14-1374, 2017 WL 2884535 (S.D. W. Va. July 6, 2017) (finding "no evidence of chicanery" and noting counsel's "abundance of experience" and the advanced stage of the litigation).

<u>The proposed Settlement Agreement is adequate</u>.

In determining whether a settlement is adequate, courts consider (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses

14

the plaintiff is likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment, (5) the degree of opposition to the settlement, (6) the terms of any proposed award of attorney's fees, (7) the plan for distributing settlement funds to class members, and (8) whether the proposal treats class members equitably relative to each other. *Jiffy Lube*, 927 F.2d at 159; Fed. R. Civ. P. 23(e)(2)(C)-(D).

The most important factor in weighing the adequacy of a proposed settlement is the strength of the plaintiff's claims on the merits combined with any difficulties the plaintiff would likely encounter if they chose to litigate on their own. *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015).

Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to class certification and then trial. Defendant denies any liability and is willing to litigate vigorously. The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through trial and potentially appeals. Kaufman Decl. ¶ 26.

Plaintiff's counsel also has taken into account the risks associated with pursuing TCPA "wrong number" cases through class certification and trial, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, and the inherent delays in such litigation. *Id.* ¶ 27; *see, e.g., Davis*, 2023 U.S. Dist. LEXIS 189255, at *34-36.

Plaintiff's counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class that far exceed the benefits conferred by settlements in other TCPA "wrong number" cases. *See, e.g., Williams*, 2019 U.S. Dist. LEXIS 56655, at *3; *James*, 2017 U.S. Dist. LEXIS 91448, at *3.

Based on their evaluation of these factors, Plaintiff and Plaintiff's counsel have determined that the Settlement is in the best interests of Plaintiff and the Settlement Class, who otherwise may have received nothing. Kaufman Decl. ¶ 27.

The monetary relief places the Settlement well within the range of possible approval. Moreover, Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs for it to be approved. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Although the TCPA provides for statutory damages of $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining. Rather, it is called upon to evaluate the probabilities of success upon a trial and to compare the benefits thereof with the terms of compromise." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

This Settlement provides an excellent result for the class—monetary relief that far exceeds the relief afforded to claimants by other approved TCPA settlements. *See, e.g., Boger v. Citrix Sys., Inc.*, No. 19-cv-01234-LKG, 2023 U.S. Dist. LEXIS 96379, at *27-28 (D. Md. June 1, 2023) ("the expected settlement payment for each Class Member is $44.14, which exceeds the typical value of claims in similar [TCPA] settlements").

Moreover, the settlement is not conditioned on any service award or award of attorneys' fees. Defendant retains the right to object to Class Counsel's fee application and request for a Service Award for Plaintiff, and attorneys' fees and a service award will be paid on a similar timeline to class member payments.

Finally, the settlement provides an efficient and fair manner for distributing settlement funds to the maximum possible number of Settlement Class Members. Settlement Class Members

16

will have the ability to submit claims for payment by submitting by mail or online a simple claim form that includes their name, address, and telephone number at which they certify they received calls subject to the settlement.

For all these reasons, the settlement is well-within the range of reasonableness and is fair and adequate. As a result, it should be approved, and notice should be sent to the Settlement Class.

## VI. THE NOTICE PROGRAM IS CONSTITUTIONALLY SOUND

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* MCL Fourth § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice program satisfies this standard. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for remaining part of the Settlement, for objecting to the Settlement, Class Counsel's attorneys' fee application, for opting-out of the Settlement, and for submitting a claim. Through the direct Notice and public notice, the Notice Plan is designed to reach a high percentage of Settlement Class members and exceeds the requirements of Constitutional Due Process. *See* Ferruzzi Decl. at ¶¶ 7-19.

The proposed forms of notice, attached as Exhibits B and D to the Settlement Agreement, are clear, straightforward, and provide Settlement Class members with enough information to evaluate whether to participate in the settlement. Thus, the Notice Program` satisfies the requirements of Rule 23 and due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (settlement notice must provide settlement class members an opportunity to present their objections). The Notice Program constitutes the best notice practicable under the circumstances, provides sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23.

17

## VII. PROPOSED SETTLEMENT APPROVAL SCHEDULE

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered.

Class Counsel propose the following schedule:

| | |
|---|---|
| Settlement Administrator provides Initial Mailed Notice to Settlement Class Members | Within thirty (30) days after entry of the Preliminary Approval Order |
| Class Counsel's application for fees, expenses, and costs and a Service Award for Representative Plaintiff | No later than thirty (30) days prior to the Opt-Out Deadline |
| Last day for Settlement Class Members to submit Claim Forms and Opt-Out Deadline | Approximately sixty (60) days after the Notice Date |
| Last day for Settlement Class Counsel to file motion in support of Final Approval | At least fifteen (15) days before Final Approval Hearing |
| Final Approval Hearing | Approximately one hundred and twenty (120) days from entry of the Preliminary Approval Order |

## VIII. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant this Motion and enter the submitted Proposed Order, preliminarily approve the parties' proposed Settlement Agreement, and establish a schedule to complete the tasks necessary to effectuate the proposed settlement.

Dated: March 10, 2025

Respectfully submitted,

*/s/ Avi R. Kaufman*
Avi R. Kaufman

18

kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

Stefan Coleman
Coleman PLLC
66 West Flagler Street
Suite 900
Miami, Florida 33130
law@stefancoleman.com
Telephone: (877) 333-9427

*/s/ Ryan Duffy*
Ryan Duffy
The Law Office of Ryan P. Duffy, PLLC
1213 W. Morehead Street
Suit 500, Unit #450
Charlotte, North Carolina 28208
ryan@ryanpduffy.com
Telephone: (704) 741-9399

*Attorneys for Plaintiff and the putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*