IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| MARDEN'S ARK CORP., and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITEDHEALTH GROUP INCORPORATED, <br><br> *Defendant*. | Case No. 5:23-cv-00708-M-KS <br><br> **CLASS ACTION** |

**PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.   INTRODUCTION

Plaintiff Marden's Ark Corp. ("Plaintiff") and Defendant UnitedHealth Group Inc. ("UHG" or "Defendant") have reached a Class Action Settlement Agreement and Release in this proposed class action brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (the "Agreement" or "Settlement") arising primarily from robocalls calls made by Defendant that were intended for insureds of UHG's subsidiary, United Healthcare, Inc. ("United Healthcare"), but, due to the transient nature of cellular telephone numbers, were in fact made to consumers who were not United Healthcare insureds – *i.e.*, "wrong number" calls.

The Agreement,[1] which is subject to this Court's final approval, creates a non-reversionary common fund of $1,846,500.00 for the benefit of Plaintiff and proposed class members who UHG's Optum Community Health Workers called as part of UHG's Optum at Home program using an artificial or pre-recorded voice who were not members or subscribers of UHG or that opted out of receiving calls from UHG. This amounts to more than $350 for each of the

---

[1] The Agreement can be found at ECF 33-1. Capitalized terms used herein, unless otherwise defined, have the same definitions as those terms in the Agreement.

1

approximately 5,000 potential Settlement Class Members that have been identified in UHG's records. *See* Declaration of Avi Kaufman, attached as Exhibit 1, ¶ 4.

To date, direct notice has been successfully delivered to more than 93% of Settlement Class Members, resulting in a 7.4% valid claims rate, and an anticipated payout of over $3,000 per valid claim. *Id*. ¶ 5. And, not a single class member has opted out of or objected to the Settlement. *Id*. ¶ 5.

The parties reached the Settlement after more than a year of contentious litigation, which included significant written fact discovery, expert analysis, and Defendant's deposition. *See* Kaufman Decl. ¶ 6. By the time the parties finalized an agreement, they were well aware of the strengths and weaknesses of their respective positions and the risks associated with pursuing TCPA "wrong number" cases through class certification and trial. *Id.*; *see, e.g., Davis v. Capital One, N.A.*, No. 1:22-cv-00903, 2023 U.S. Dist. LEXIS 189255, at *34-36 (E.D. Va. Oct. 20, 2023) ("Davis has also cited 'wrong-number' cases where class certification was granted, but there were findings in those cases, not present here, and in some of those cases, reserved on whether the issue of consent would justify de-certification. … Capital One, by contrast, has pointed to numerous district court decisions where a 'wrong-number' class was not certified for class treatment. Courts in these cases generally all found that class certification was inappropriate because of a lack of ascertainability and the predominance of individualized issues over common issues.").

In addition, to discuss settlement, the parties engaged in a full-day mediation session with the able assistance of Brad Winters, Esq. of JAMS, Inc. Kaufman Decl. ¶ 7.

If finally approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled legal questions. The proposed settlement is fair, reasonable, and adequate, and both the amount apportioned per Settlement Class Member in the Settlement and the anticipated Settlement Class Member payments far exceed their equivalents in similar "wrong number" TCPA cases across the country. *See, e.g., Williams v. Bluestem Brands, Inc.*, No. 8:17-cv-1971-T-27AAS, 2019 U.S. Dist. LEXIS 56655, at *3 (M.D. Fla. Apr. 2, 2019) (preliminary approving $1,269,500 settlement for an approximately 280,000

person class in a TCPA "wrong number" case); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017 U.S. Dist. LEXIS 91448, at *3 (M.D. Fla. June 5, 2017) ("Chase established a $3.75 million fund for the 675,000-member class, and 24,156 class members submitted a valid claim. Each claimant will receive approximately $81, which equals or exceeds the recovery in a typical TCPA class action.").

Accordingly, given the extraordinary result, Plaintiff respectfully requests that the Court grant final approval to the Settlement, find that the class notice program satisfies due process and Rule 23, find the Settlement Agreement to be fair, reasonable, and adequate for the Class, and dismiss the claims against Defendant with prejudice, retaining jurisdiction of matters only relating to enforcement of the Settlement Agreement.

## II. BACKGROUND

On December 11, 2023, Plaintiff Marden's Ark Corp. filed a complaint against UHG in this action asserting that Defendant violated the TCPA by making pre-recorded calls to consumers who were not United Healthcare insureds without consent and for failing to stop the calls when consumers expressly requested to not be called. On February 20, 2024, UHG answered the complaint. ECF 12.

Since inception, the case has involved extensive discovery. On April 2, 2024, Plaintiff served written discovery requests on Defendant. Defendant responded to discovery, and the parties engaged in lengthy meet and confers which resulted in Defendant supplementing its responses. Both parties have exchanged a substantial amount of documents in discovery. Plaintiff also worked with an expert to analyze the voluminous call records produced by UHG, preparing Plaintiff to resolve this action for the benefit of the Settlement Class or, if the case did not resolve, to move for class certification. Plaintiff also responded to discovery requests from Defendant. On August 30, 2024, Plaintiff served a notice for the deposition of Defendant's records custodian for the call records related to the calling campaign at issue. On September 12, 2024, Plaintiff took the deposition of Defendant's representative who managed the operations of Defendant's Pharmacy Outreach Call Center program. On September 25, 2024, Plaintiff served a notice for Defendant's

corporate representative deposition, and began the conferral process with Defendant regarding deposition topics. Kaufman Decl. ¶ 10.

On January 16, 2025, the parties participated in an all-day mediation with Bradley Winters, Esq. of JAMS, Inc. and reached an agreement as to the framework of a class-wide resolution. The parties worked over the following weeks to reach a formal written class settlement agreement.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation against Defendant through trial and appeals. Class Counsel also has taken into account the difficulties in obtaining class certification and proving liability in "wrong number" cases, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, and the inherent delays in such litigation. *See, e.g., Davis*, 2023 U.S. Dist. LEXIS 189255, at *34-36. Class Counsel believes that the proposed Settlement is an excellent result for the Settlement Class, exceeding the per class member and per claim amounts of similar class action settlements in "wrong number" cases. Based on their evaluation of all of these factors, Plaintiff and Class Counsel have determined that the Settlement is in the best interests of Plaintiff and the Settlement Class. Kaufman Decl. ¶ 12.

Class Counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Class whereas continued and protracted litigation, even if successful, might ultimately deliver none. Kaufman Decl. ¶ 13. Based on their evaluation of all these factors, Plaintiff and Class Counsel have determined that the Settlement is in the best interests of the Plaintiff and the Settlement Class. *Id*.

### III. THE PROPOSED SETTLEMENT

#### A. The Settlement Class

The proposed Settlement Class includes: All regular users or subscribers to numbers assigned to wireless carriers which Optum Community Health Workers called as part of the Optum at Home program during the Settlement Class Period using an artificial or pre-recorded voice who were not members or subscribers of United Healthcare or that opted out of receiving calls from United Healthcare. Excluded from the Settlement Class are: (1) the Judges presiding over this

action and members of their families; (2) the Defendant, Defendant's respective subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded person(s). Agreement at § 1.1.34.

## B. Settlement Relief

The Settlement provides meaningful monetary relief. Pursuant to the Agreement, Defendant will cause to be created a non-reversionary Settlement Fund in the amount of $1,846,500.00 for the purpose of making all required payments under this Settlement. Agreement at § 4.

## C. Notice Program

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Settlement provided for direct notice via U.S. Postal Service to any Settlement Class Member for which a mailing address was identified and/or by email to any Settlement Class Member for which an email address was identified, which was supplemented by an online media campaign targeted towards adults 18 years of age or older. The settlement administrator has completed all notice obligations to date and is continuing to administer the notice and claims process.

To date, direct mail notice has been successfully delivered to more than 4,600 Settlement Class Members, direct email notice has been successfully delivered to more than 3,700 Settlement Class Members, and the online media campaign has reached an additional 3.8 million consumers, resulting in a reach rate of over 90% for the Notice Plan as a whole. Settlement Administrator

5

Declaration, Exhibit 2, at ¶ 14. And based on the implementation of the Notice Plan, 366 timely, valid claims have been filed. *Id*. at ¶ 19.

As a result, the notice accomplished in this case exceeds established due process requirements for class notice. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), available at https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of 70-95%.); *see also Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.").

All in all, the Notice Program constitutes the best notice practicable under the circumstances, provides sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23. Kaufman Decl. ¶ 5.

### D. Claims, Objections, and Opt Outs

The Settlement Administrator shall issue payment by check or electronic payment from the Settlement Fund to each Settlement Class Member who does not opt out of the Settlement and who timely submitted a valid claim. The deadline to submit a claim, request exclusion from the Settlement, or to object to the Settlement was June 25, 2025.

As of July 1, 2025, more than 735 claims have been filed, resulting in a claims rate of 12% of the total Settlement Class. Of these, 366 claims have been deemed valid by the Settlement Administrator. Additionally, not a single Settlement Class Members has objected to or opted out of the Settlement. Settlement Administrator Decl. ¶¶ 18-21. Given these results, there can be no doubt that Settlement Class Members have reacted positively to the settlement.

## IV. THE SETTLEMENT MERITS FINAL APPROVAL

### A. The Settlement Class Should Be Certified

In granting preliminary approval, the Court provisionally certified the Settlement Class for settlement purposes. For all the same reasons contained in Plaintiff's preliminary approval memorandum (ECF 33), the Settlement Class meets the requirements of Rule 23, and should be

6

certified for settlement purposes.

### B. The Settlement Is Fair, Reasonable And Adequate

The settlement of a class action requires approval by a district court. Fed. R. Civ. P. 23(e); *Scardelletti v. Debarr*, 43 F. App'x. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). A court may do so only after a hearing and on finding that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158 ; *see* Fed. R. Civ. P. 23(e) (identifying relevant factors for settlement approval: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate…; and (D) the proposal treats class members equitably relative to each other.").

At this final approval stage, the Fourth Circuit has adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158.

A class settlement is fair when it is "reached as a result of good faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159. The Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Smith v. Res-Care, Inc.*, CV 3:13-5211, 2015 WL 461529, at *3 (S.D.W. Va. Feb. 3, 2015) (citing Manual for Complex Litigation, § 30.44 (1985)). "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Kirven v. Central States Health & Life Co. of Omaha*, No. 3:11-2149-MBS, 2015 WL 1314086, at *5 (D.S.C. Mar. 23, 2015); *Geissler v. Stirling*, No. 4:17-cv-01746-MBS, 2019 U.S. Dist. LEXIS 131110, at *14-15 (D.S.C. Aug. 5, 2019).

7

In evaluating the fairness of a proposed settlement, the Court should consider these factors: (1) the posture of the case at the time the settlement is proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; (4) the experience of counsel in the relevant area of class action litigation; and (5) whether the plaintiff and class counsel have adequately represented the class. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; Fed. R. Civ. P. 23(e)(2)(A)-(B). "A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's length negotiations." *Geissler*, 2019 U.S. Dist. LEXIS 131110, at *9 (internal citation omitted).

In determining adequacy, the relevant considerations include: (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses plaintiff is likely to encounter if the case proceeds to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and likelihood of recovery of a litigated judgment; (5) the degree of opposition to the settlement; (6) the terms of any proposed award of attorney's fees; (7) the plan for distributing settlement funds to class members; and (8) whether the proposal treats class members equitably relative to each other. *Scardelletti*, 43 F. App'x. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; Fed. R. Civ. P. 23(e)(2)(C)-(D).

All of these factors weigh strongly in favor of final approval.

### 1. *The Posture of the Case and the Discovery Conducted By The Time Of Settlement Support Approval*

"This factor requires the court to determine whether the case was well-enough developed for the parties to appreciate the full landscape of their case." *Kirven,* 2015 U.S. Dist. LEXIS 36393, at *11-12 (internal citation omitted). Here, the parties reached a settlement after a year of contentious litigation, which included significant written fact discovery, expert analysis, and Defendant's deposition. Kaufman Decl. ¶ 6.

8

Class Counsel's review of the discovery and attendant issues enabled them to gain an understanding of the evidence related to central questions in the action and prepared them for well-informed settlement negotiations based on a thorough analysis of the issues, including the difficulties in obtaining class certification and proving liability in "wrong number" TCPA cases. As a result, both the parties and the Court have sufficient information to appraise the significant risks in continued litigation, including but not limited to class certification prospects and the fairness of settlement terms. That knowledge base, coupled with the parties' respective assessments of the relative strengths and weaknesses of their legal positions, all weigh in favor of granting final approval, because they ensure that the parties and the Court are able to fairly evaluate the case. Kaufman Decl. ¶ 13.

### 2. *The Negotiation Process Was At All Times Arm's Length And Was Overseen By An Experienced Mediator*

"The circumstances surrounding the negotiations also favor approval. An experienced mediator assisted the parties, and there is no evidence of coercion or collusion that would cast doubt on the fairness of these negotiations." *Reynolds v. Fid. Invs. Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 U.S. Dist. LEXIS 2710, at *13-14 (M.D.N.C. Jan. 7, 2020). Here, the circumstances surrounding the negotiation of the Settlement demonstrate that the negotiations were wholly in good faith and without collusion. The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this action. Kaufman Decl. ¶ 11. Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. *See* Class Counsel Declarations filed in support of Motion for Class Counsel Fees (ECF 35-1 and 35-3). And Defendant was represented by first-rate counsel from Hogan Lovells with their own extensive experience in TCPA and other class litigation.

The parties reached agreement only after a full-day mediation session with the able assistance of Brad Winters, Esq. of JAMS, Inc. Kaufman Decl. ¶ 11. At all times the negotiations

9

were at arms' length and free from collusion. *Id*. Plaintiff's counsel steadfastly advocated for substantial settlement relief. Plaintiff and Plaintiff's counsel also were well aware of the risks they faced if they continued to litigate, particularly the risks inherent in class certification and the difficulties involved in "wrong number" cases. *Id.* ¶ 12-13. Plaintiff relied on the judgment of counsel, who have extensive experience litigating, settling, and trying TCPA, and other class actions. In such circumstances, it may be presumed that a settlement is fair. *See Good v. W. Va.-Am. Water Co.*, No. 14-1374, 2017 WL 2884535 (S.D.W. Va. July 6, 2017) (finding "no evidence of chicanery" in the circumstances surrounding the settlement and noting counsel's "abundance of experience" and the advanced stage of the litigation).

### 3. *Class Counsel Are Experienced TCPA Litigators and Plaintiff and Class Counsel Have Adequately Represented the Class*

"The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution." *Kirven*, 2015 U.S. Dist. LEXIS 36393, at *13. And the inquiry into a plaintiff's adequacy focuses on whether their "claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000).

Here, Class Counsel diligently litigated the class's claims. Consistent with that, Class Counsel are experienced class action attorneys who are skilled in litigating and resolving class actions in general, and TCPA class actions in particular, and are extremely familiar with all of the factual and legal issues of this case. Specifically, Class Counsel focus their practices on litigating consumer class action claims and have particularly broad experience in the litigation of TCPA class actions. *See* Class Counsel Declarations filed in support of Motion for Class Counsel Fees (ECF 35-1 at ¶¶ 15-20 and 35-3 at ¶¶ 3-4). Given the breadth of Class Counsel's experience, and the diligence with which they pursued the class's claims, their opinion should weigh strongly in favor of approval of the Settlement.

10

Additionally, Plaintiff's claims and interests in this litigation are aligned with those of the class. Plaintiff and all class members seek the same recovery for the same type of unlawful calls pursuant to the TCPA. Kaufman Decl. ¶ 6.

And the conclusion that Class Counsel and Plaintiff have adequately represented the class is supported by the terms of the proposed award of attorneys' fees, the plan for distributing settlement funds to class members, and the manner in which the settlement treats class members relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)-(D).

Specifically, the settlement provides an efficient and fair manner for distributing settlement funds to the maximum possible number of Settlement Class Members. Consistent with that, all valid claimants will receive the same anticipated payment of more than $3,000.

Moreover, the settlement was not conditioned on any award of attorneys' fees and Defendant retained the right to object to Class Counsel's fee application. And, finally, attorneys' fees will be paid on a similar timeline to other class member payments. Kaufman Decl. ¶ 6.

As a result, each of these factors weighs in favor of final approval.

### 4. *The Relative Strength Of The Plaintiff's Case On The Merits And The Existence Of Any Difficulties Of Proof Or Strong Defenses The Plaintiff Is Likely To Encounter If The Case Goes To Trial*

While Plaintiff and the Class believe they would prevail on class certification and at trial, Defendant strongly argued otherwise. The risk of no recovery here—and in complex cases of this type more generally—is real.

By the time the parties finalized an agreement, they were well aware of the strengths and weaknesses of their respective positions and the risks associated with pursuing TCPA "wrong number" cases through class certification and trial. *See, e.g., Davis v. Capital One, N.A.*, No. 1:22-cv-00903, 2023 U.S. Dist. LEXIS 189255, at *34-36 (E.D. Va. Oct. 20, 2023) ("Davis has also cited 'wrong-number' cases where class certification was granted, but there were findings in those cases, not present here, and in some of those cases, reserved on whether the issue of consent would

11

justify de-certification. … Capital One, by contrast, has pointed to numerous district court decisions where a 'wrong-number' class was not certified for class treatment. Courts in these cases generally all found that class certification was inappropriate because of a lack of ascertainability and the predominance of individualized issues over common issues."); *Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4 (D. Mass. 2019) (denying class certification in TCPA "wrong number" case in which the plaintiff was represented by Class Counsel in this case).

Class certification is also far from automatic in TCPA cases generally. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same) *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized), and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

"In evaluating a settlement, the trial court should not decide the merits, or proceed from the assumption that victory is one hundred percent assured and that all claimed damages are properly recoverable. As one court has observed, '[a] settlement is by nature a compromise between the maximum possible recovery and the inherent risks of litigation. The test is whether the settlement is adequate and reasonable and not whether a better settlement is conceivable.'" *Muhammad v. Nat'l City Mortg., Inc.*, Civil Action No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534, at *13 (S.D.W. Va. Dec. 19, 2008) (internal citations omitted). The risks of the litigation and the complexity of the issues involved weigh in favor of granting final approval to the Settlement.

### 5. *The Anticipated Duration And Expense Of Additional Litigation*

The complexity, expense, and duration of litigation are factors that support approval of a

settlement. *In re Corp. Litig.*, 264 F.3d 201, 231, 233 (3d Cir. 2001); *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975) (identifying complexity, expense, and duration as one of nine factors in determining the fairness of settlement). Here, major hurdles remain in this litigation, including class certification and summary judgment. Kaufman Decl. ¶ 12. The parties ultimately elected to forgo the delay and expense of continued litigation in reaching a settlement that took the significant risks of further litigation into account while still providing remarkable monetary relief.

### 6. The Solvency Of The Defendant And Likelihood Of Recovery On A Litigated Judgment

While the solvency of the Defendant and the ability to recover if Plaintiff were to proceed to trial is not of particular concern here, there is benefit to avoiding delay in payment and the uncertainty involved in continued litigation. As one court acknowledged in approving a TCPA settlement funded by a large company:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation....

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016). The certainty created by the Settlement achieved by Plaintiff's counsel is valuable and prudent for the Class, particularly given the monetary relief obtained on a per Settlement Class Member and per claimant basis.

### 7. Other Factors: The Settlement Amount Is Significant And The Lack Of Objections Indicates The Class's Support

The amount apportioned under the Settlement per Settlement Class Member, which exceeds $350, and the anticipated Settlement Class Member payments, which are estimated to be more than $3,000, far exceed those amounts in similar "wrong number" TCPA cases across the country. Kaufman Decl. ¶ 9; *see, e.g., See, e.g., Williams*, 2019 U.S. Dist. LEXIS 56655, at *3 (M.D. Fla. Apr. 2, 2019) ($4.53 per class member); *James*, 2017 U.S. Dist. LEXIS 91448, at *3

($5.55 per class member and $81 per claimant with a less than 4% claims rate); *Couser*, 125 F. Supp. 3d at 1044 ($2.13 per class member and $13.75 per claimant with a 7.7% claims rate).

The reaction of the class members to the settlement supports final approval as well. "An absence of objections and a small number of opt-outs weighs significantly in favor of a settlement's adequacy." *Kirven*, 2015 U.S. Dist. LEXIS 36393, at *14. The reaction of the class to the settlement has been positive, with *no objections and no opt outs*. Kaufman Decl. ¶ 5.

Given the monetary relief obtained as a result of the vigorous litigation of this action, especially in light of the risks inherent in litigation of "wrong number" TCPA cases, the Settlement should be finally approved.

Dated: July 18, 2025　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Avi R. Kaufman*
　　　　　　　　　　　　　　　　　　　　Avi R. Kaufman
　　　　　　　　　　　　　　　　　　　　kaufman@kaufmanpa.com
　　　　　　　　　　　　　　　　　　　　KAUFMAN P.A.
　　　　　　　　　　　　　　　　　　　　237 South Dixie Highway, Floor 4
　　　　　　　　　　　　　　　　　　　　Coral Gables, FL 33133
　　　　　　　　　　　　　　　　　　　　Telephone: (305) 469-5881

　　　　　　　　　　　　　　　　　　　　Stefan Coleman
　　　　　　　　　　　　　　　　　　　　Coleman PLLC
　　　　　　　　　　　　　　　　　　　　66 West Flagler Street
　　　　　　　　　　　　　　　　　　　　Suite 900
　　　　　　　　　　　　　　　　　　　　Miami, Florida 33130
　　　　　　　　　　　　　　　　　　　　law@stefancoleman.com
　　　　　　　　　　　　　　　　　　　　Telephone: (877) 333-9427

　　　　　　　　　　　　　　　　　　　　*/s/ Ryan Duffy*
　　　　　　　　　　　　　　　　　　　　Ryan Duffy
　　　　　　　　　　　　　　　　　　　　The Law Office of Ryan P. Duffy, PLLC
　　　　　　　　　　　　　　　　　　　　1213 W. Morehead Street
　　　　　　　　　　　　　　　　　　　　Suit 500, Unit #450
　　　　　　　　　　　　　　　　　　　　Charlotte, North Carolina 28208
　　　　　　　　　　　　　　　　　　　　ryan@ryanpduffy.com
　　　　　　　　　　　　　　　　　　　　Telephone: (704) 741-9399

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff and the putative Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 18, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*